THE HONORABLE RICARDO S. MARTINEZ

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR 21-193-RSM |
| Plaintiff, | ) | |
| v. | ) | DEFENDANT'S SENTENCING MEMORANDUM |
| SABRINA TAYLOR, | ) | |
| Defendant. | ) | |

This Court should sentence Sabrina Taylor to a term of probation or supervised release with one-year of home detention on electronic monitoring. Sabrina's history contains evidence of trauma and public shaming. Certainly, Sabrina lied, stole money, and betrayed the trust of the victims. But she has accepted responsibility for committing the offenses in a way that has gone above and beyond the usual situation, especially in cases that involve fraud. Sabrina offered to meet with each victim in a restorative justice circle. One person that Sabrina harmed came forward to participate. He believes the process was beneficial and does not wish for Sabrina to go to prison.

Sabrina continues to offer the victims an opportunity to meet with her in a moderated restorative justice circle. This offer extends beyond the date of the sentencing and no matter the outcome of the hearing. Sabrina simply wants the victims to have options for healing from her lies and betrayal of trust.

Still, any custodial sentence imposed on Sabrina places her at an unacceptable risk of being a victim of a crime perpetrated and unaddressed by the very institution

DEFENDANT'S SENTENCING MEMORANDUM
(*U.S. v. Taylor*; CR21-193-RSM) - 1

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

responsible for her safety. Noticeably absent from the government's sentencing memorandum (Dkt. 47) and the materials submitted by Probation is sufficient acknowledgement that the Bureau of Prisons (BOP) has a prolonged and systemic problem with protecting female prisoners from sexual abuse by BOP employees. Ex. 1 (with counsel's highlights). This is especially problematic because Sabrina is a survivor of sexual assault. As the defense explained to the government in an e-mail, written on January 6, 2023, requesting additions to the Probation materials:

> a "bipartisan Senate investigation has found widespread abuse of women in [federal] prison by [those] tasked to protect them." This includes "evidence of sexual abuse in at least two-thirds of the federal facilities that housed women over the past decade." See https://www.npr.org/2022/12/13/1142594198/male-prison-employees-assault-women-in-at-least-two-thirds-of-u-s-prisons. Ms. Taylor's progress with treatment, employment, and her continued offer to engage in restorative justice with each victim outweighs the need for a prison sentence and the potential that she may be sexually assaulted in prison.
>
> After the victims uncovered Sabrina Taylor's lies and manipulation, she has been committed to making things right for them. Sabrina admitted she lied to steal money. Sabrina caused financial hardship and emotional trauma because of her betrayal of trust.

Defense counsel provided Probation with information and background on the issue of sexual abuse in BOP facilities, including a copy of the entire staff report from the United States Senate Permanent Subcommittee on Investigations. Ex. 1. However, Probation deflected its analysis of this information and how it should affect Sabrina's sentence by noting that sexual assault of women in the BOP "appears better suited for counsel's sentencing memorandum." Addendum to Presentence Investigation Report (PSR).

There is no dispute that the BOP is unable to protect women from sexual assault. Despite claims of a "different perspective" on justice and an admission that "(o)ur

DEFENDANT'S SENTENCING MEMORANDUM
(*U.S. v. Taylor*; CR21-193-RSM) - 2

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

criminal justice system has immense problems" by the leadership of this USAO[1], the government requests this Court to send Sabrina to prison for 27 months. Avoiding the issue and requesting imprisonment is not progress. Unless the USAO is able to assure the Court that Sabrina will not be sexually assaulted in the BOP, this Court should not sentence her to prison. Therefore, Sabrina requests a non-custodial sentence with the lengthiest term of supervision allowed by statutes and a one-year period of home detention with electronic monitoring.

## I. SABRINA'S HISTORY, CHARACTERISTICS, AND ACCEPTANCE OF RESPONSIBILITY

Apart from the mitigating nature of the risk to her personal safety if she is put in custody, Sabrina has demonstrated remorse and acceptance for the harm she caused to the victims. Ex. 2 (Letter from Sabrina Taylor); Ex. 3 (Memo on Restorative Justice). Probation documented Sabrina's history, characteristics, and the nature of the crimes she committed. PSR at ¶¶ 9-22, 38-100. Sabrina has not and does not dispute the harm she caused and her actions. She does not contest the amount of restitution payable to the victims and has agreed to all Guideline increases sought by the government.

Sabrina was willing and ready to accept responsibility from the moment she met with defense counsel. Her initial appearance occurred on November 15, 2021. Dkt. 6. She was charged by way of a complaint, an informal charge that just represents an accusation. Dkt. 1. If it had been possible to plead guilty to the complaint, Sabrina would have done so. At 3:09 p.m. the same day, the defense reached out to the then-assigned Assistant United States Attorney (AUSA) by e-mail confirming what had been represented to the AUSA in court: Sabrina was willing to waive her right to a

---

[1] Mike Carter, *From TV to U.S. attorney: Nick Brown plans 'different perspective' on justice in Seattle*, The Seattle Times (Oct. 20, 2021, 10:10 AM), https://www.seattletimes.com/seattle-news/from-tv-to-u-s-attorney-nick-brown-plans-different-perspective-on-justice-in-seattle/.

DEFENDANT'S SENTENCING MEMORANDUM
(*U.S. v. Taylor*; CR21-193-RSM) - 3

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

speedy indictment and preliminary hearing because she wanted to resolve the case. Undersigned counsel offered an extension to February 2022 to review the discovery, meet and confer with the government, and figure out a resolution to help the government avoid having to do extra work for no reason. The government did not accept counsel's offer and proceeded to charge her by way of an Indictment.

Then, on December 17, 2021, the defense sent an e-mail to the government "(a)t Sabrina's request" because the defense "reached out to [Collective Justice NW] to see what can be accomplished through a restorative justice process. [Sabrina] is hoping that this process will help the alleged victims." Sabrina wanted to proactively participate in anything she could to validate and acknowledge the victims' experiences and the harm she caused.

Sabrina did plead guilty and the government agreed that Sabrina qualifies for the full 3 levels for acceptance of responsibility because she "assisted authorities in the investigation or prosecution of [her] own misconduct by timely notifying authorities of [her] intention to enter a plea of guilty…." USSG § 3E1.1(b); PSR at ¶ 36; Dkt. 47 at 5. Achieving 3 levels for acceptance of responsibility is significant because it indicates Sabrina truthfully admitted her conduct, withdrew from criminal conduct, agreed to pay restitution to the victims, and sought post-offense rehabilitative efforts like counseling or treatment. USSG § 3E1.1, comment. (n. 1). Sabrina has sought help through counseling, treatment, and medication. PSR at ¶¶ 72-78.

Sabrina voluntarily met with Probation for an interview on August 16, 2022, answered every question about her life, and she talked about the instant offenses. PSR at ¶ 44. She met with Probation, again, on November 17, 2022 in a follow up virtual meeting. PSR at ¶ 44. Sabrina signed releases of information allowing Probation to gather any background information about her. Sabrina provided Probation with requested financial information.

DEFENDANT'S SENTENCING MEMORANDUM
(*U.S. v. Taylor*; CR21-193-RSM) - 4

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

Sabrina voluntarily engaged in a Community HEAL Circle for BIPOC Femme Survivors, through Collective Justice NW, three hours a week for six months. Ex. 4. Sabrina was the only non-victim in the group. Every other participant was a victim of an offense unrelated to Sabrina's case.

Sabrina, through her defense team, offered to meet with each victim of the instant offense, if they were willing to meet with her, in a restorative justice circle. Counsel is unaware of any other effort to engage in a restorative justice circle with victims in this district. If so, this is a first and should be a model for all other cases involving fraud, like this one, with the offender claiming full responsibility for committing the offense from the start.

With this Court's permission (Dkt. 37), Sabrina participated in a restorative justice circle with one of the victims. PSR at ¶ 25. Sabrina expressed her remorse and shame to the victim in a way that benefitted the victim. PSR at ¶ 25; Ex. 3 at 4-5. This victim suffered substantial harm from Sabrina's crimes and lies. However, after participating in the restorative justice process, this individual has voiced his position that Sabrina should not go to prison.

## II. A LARGE BODY OF RESEARCH, SUMMARIZED BY THE UNITED STATES DEPARTMENT OF JUSTICE (DOJ), SUPPORTS A NON-PRISON SENTENCE.

Sabrina has never been to prison. In fact, Sabrina has never been arrested or convicted of a crime prior to the instant offense. PSR at ¶¶ 38-43 (indicating "none" for juvenile adjudications, adult criminal convictions, other criminal conduct, pending charges, and other arrests, as well as a criminal history score of zero and a scoring in the lowest criminal history category).

The sentencing statute, 18 U.S.C. § 3553(a), requires this Court to "impose a sentence sufficient, but not greater than necessary…." The sentence must comply with the need for the sentence imposed "(A) to reflect the seriousness of the offense, to

DEFENDANT'S SENTENCING
MEMORANDUM
(*U.S. v. Taylor*; CR21-193-RSM) - 5

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

promote respect for the law, and to provide just punishment; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of [Sabrina]; and (D) to provide [Sabrina] with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner….” 18 U.S.C. § 3553(a)(2). 18 U.S.C. § 994(j) demands the sentencing guidelines "reflect the general appropriateness of imposing a sentence other than imprisonment in cases in which the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense….”

The government and Probation have anchored their recommendations to the sentence guidelines. But the sentence guidelines are "due for substantial overhauling" because "they empower[] prosecutors and police to perpetuate discriminatory sentencing outcomes…." Ex. 5. "Indeed, many justice-involved individuals with little risk of recidivating are serving lengthy prison terms under the guidelines despite research showing the adverse impacts of incarceration—on children and families, on communities, and on the ability of a person to lead a law-abiding life." Ex. 5. The guidelines are not based on "a careful empirical analysis of existing sentencing patterns…." Ex. 5. "Justice Stephen Breyer, their principal architect, conceded that [the guidelines] reflected political compromises, not the kind of careful criminological research that one would expect to be done by an expert agency." Ex. 5. Yet, the recommendations of the government and Probation are anchored in the guidelines.

Actual research undercuts the recommendations of the government and Probation. In its synthesis of research to understand "the relationship between sentencing and deterrence," the DOJ released its conclusions in the "National Institute of Justice Five Things About Deterrence." Ex. 6. The research supports a non-custodial sentence for Sabrina.

DEFENDANT'S SENTENCING MEMORANDUM
(*U.S. v. Taylor*; CR21-193-RSM) - 6

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

First, the research finds "the certainty of being caught is a vastly more powerful deterrent than the punishment." Ex. 6 at 1. In other words, "the chance of being caught is a vastly more effective deterrent than even draconian punishment." Ex. 6 at 1.

Sabrina was certain to be detected and charged for her lies and fraud. The offense lacked sophisticated measures. Her very own messages and lies provided a roadmap for the government to investigate and charge her with crimes. There has never been controversy that Sabrina was the one who lied and Sabrina was the one who stole the money.

For future offenses, Sabrina knows she will be caught because of the spotlight on her case through the media and websites. Beyond the recognition that she will be caught, Sabrina has been able to take advantage of therapy and treatment – outside of a prison setting – to ensure she does not create the same conditions from when she committed the instant offenses. A term of imprisonment will interrupt the continuity that is so important to keep Sabrina housed, employable, and mentally and physically stable.

Second, "sending an individual convicted of a crime to prison isn't a very effective way to deter crime." Ex. 6 at 1. The research showed that "prison sentences…are unlikely to deter future crime" and "(p)risons may have the opposite effect…." Ex. 6 at 1. Here, prison is unlikely to deter future crime because Sabrina has already been deterred. Even at her initial appearance in November 2021, this Court issued an appearance bond and did not detain Sabrina in custody because conditions could be placed upon her that "will reasonably assure the safety of any other person and the community…." Dkt. 8; 18 U.S.C. § 3142(c).

Then, even after she was formally charged by Indictment – a process she offered to avoid by pleading guilty to an Information – this Court "ordered that conditions of release be continued as previously set." Dkt. 13. Sabrina has been on pretrial release for

DEFENDANT'S SENTENCING MEMORANDUM
(*U.S. v. Taylor*; CR21-193-RSM) - 7

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

nearly 15 months. In a memorandum filed with this Court on January 17, 2023, Probation noted Sabrina "was released to Pretrial Services supervision on November 15, 2021, with…conditions of supervision…." Sabrina "has demonstrated substantial compliance with the conditions of her release." She "has participated in mental health services, consisting of taking prescribed mental health medications throughout her time on pretrial release…, provided Pretrial Services with requested financial information…," and "maintained…a single checking account to conduct her legitimate financial transactions."

Sabrina "maintained employment and/or actively sought employment throughout her time on pretrial release" and "contributed towards the costs of services required by her bond as determined by Pretrial Services." Sabrina has not contacted any witness or victims, "aside from her pre-approved participation in a Restorative Justice Circle." Supervision by Pretrial Services, since November 2021, led to its recommendation that Sabrina "be considered an appropriate candidate for voluntary surrender" if she receives a prison sentence. It defies logic to send Sabrina to prison and place her in a worse position by taking away her medications and treatment and then causing her to have to start all over again when she is released, especially when Probation supervision has proven to work.

Third, per DOJ findings, "police deter crime when they do things that strengthen a criminal's perception of the certainty of being caught." Ex. 6 at 1. As noted above, Sabrina has changed the conditions that fostered her illegal acts. She has therapy, medication, and treatment. Prison will only interrupt her progress. It will leave her homeless and without the ability to work. Probation confirmed Sabrina "has been actively working on stabilizing her mental health for the past several years" and "found a medication regimen [that] assists in her thought processes and offers ongoing

DEFENDANT'S SENTENCING MEMORANDUM
(*U.S. v. Taylor*; CR21-193-RSM) - 8

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

stability, and she has benefitted from mental health counseling during her period of release." Sentencing Recommendation at 5.

Sabrina will not receive mental health treatment in the custody of the BOP. She will not receive the medication regimen that offers stability. It defies logic to place her in the custody of the BOP when all parties know she will not receive appropriate treatment or health care. Probation and the government justify a prison sentence recommendation, in part, because it will serve as punishment. But the issue is whether prison is "just" or appropriate punishment as defined by the sentencing statute. The DOJ's own findings undercut the necessity or fairness of a prison sentence.

But just as police deter crime when they strengthen the perception of being caught, so does the supervision by this district's Probation Office. Sabrina's mindset and conduct have evolved with the oversight of Probation. She knows her conduct has been monitored. Sabrina has not committed any crime on supervision. The option provided by supervision through Probation demonstrates a prison sentence would violate the command of the sentencing statute, 18 U.S.C. § 3553(a), because it represents a sentence that is "greater than necessary."

Fourth[2], the DOJ found that "increasing the severity of punishment does little to deter crime." Ex. 6 at 1. Sabrina offers this Court with a sentence that is no greater than necessary – lengthy supervision by Probation with one-year of home detention on electronic monitoring. Home detention is a strong form of punishment. Sabrina would not be allowed to leave her home unless she received permission, far in advance, from Probation. A prison sentence represents an increase in the severity of punishment over home detention with electronic monitoring. DOJ research shows that "(m)ore severe

---

[2] The fifth research point refers to deterrence based on death penalty laws and is not relevant.

DEFENDANT'S SENTENCING MEMORANDUM
(*U.S. v. Taylor*; CR21-193-RSM) - 9

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

punishments do not "chasten" individuals convicted of crimes, and prisons may exacerbate recidivism." Ex. 6 at 1.

The DOJ concludes society should "(d)eter would-be criminals by using scientific evidence about human behavior and perceptions about the costs, risks and rewards of crime." Ex. 6 at 1. Treatment, therapy, and supervision work to punish and deter Sabrina. Therefore, sending Sabrina to prison would be unjust and unnecessary.

### III. A PRISON SENTENCE WILL CREATE A DISPARITY WITH OTHERS IN THIS DISTRICT.

Sending Sabrina to prison will create an unwarranted disparity among others with similar records who have been found guilty of similar conduct. Sabrina presents the following cases as examples.

#### A. *United States v. Paige Thompson*, CR19-159RSL, W.D. Wash.

According to the government, Thompson was not remorseful about her crime and continued to profit from her scheme after she was arrested by the FBI and while on pretrial release. According to the government, Thompson caused more than $25 million in losses, affected 10 or more victims, and used sophisticated means. Thompson challenged the government's evidence and proceeded to a trial in front of a jury. The Probation Office, according to the government's memo, calculated a loss of approximately $40 million. The government calculated her guideline range at 210-262 months. Thompson was found guilty of committing seven federal crimes, including wire fraud. In this district, on October 4, 2022, the Court sentenced Thompson to a total of 5 years of probation, no additional time in custody, and an order that Ms. Thompson pay restitution in the amount of $40,745,000.

#### B. *United States v. Alex Nguyen*, CR21-182RSL, W.D. Wash.

The Court sentenced Nguyen to three years of probation and no time in prison, on October 20, 2022, after he pled guilty to one count of wire fraud. The Court ordered

DEFENDANT'S SENTENCING MEMORANDUM
(*U.S. v. Taylor*; CR21-193-RSM) - 10

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

restitution in the amount of $505,960 to the victims. According to the government's sentencing memorandum, the guideline range was 24-30 months and the government recommended 18 months in prison. The government claimed Nguyen developed and executed a comprehensive operation to unjustly enrich himself starting in August 2020. Nguyen committed a high-volume scheme involving more than 6,000 fraudulent transactions. Nguyen attempted to shield his identity. When Nguyen was caught, according to the government, he used deceit by falsely claiming his actions were authorized.

Nguyen's criminal history, according to the government, consisted of writing checks on closed accounts in 2007, theft of a wallet and use of a credit card in 2008, theft of two luxury cars from a car lot in 2008, three counts of forgery in 2012, and a vehicle theft for failing to return a luxury rental car in 2015. The government claimed Nguyen's crimes showed sustained behavior, grounded in deceit, over a considerable period of time. Progressive sanctions did not curtail illegal behavior but, instead, Nguyen's behavior became more complex and sophisticated since coming into contact with the criminal justice system.

C.   *United States v. Kevin Puls*, CR19-228JCC, W.D. Wash.

On September 6, 2022, the Court sentenced Puls to 3 months in custody and one year of supervised release after he pled guilty to a conspiracy to solicit and receive kickbacks involving a federal health care program. The plea agreement required Puls to pay $461,752.10 in restitution, joint and several. He received a fine of $10,000. According to the government, Puls fooled lawyers to write fraudulent letters to trick doctors into believing the business he worked for was engaged in legal behavior. Puls was the company's "top lieutenant." The guideline range was 24-30 months, according to the government.

DEFENDANT'S SENTENCING MEMORANDUM
(*U.S. v. Taylor*; CR21-193-RSM) - 11

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

**D.    *United States v. Michele Sharar*, CR22-58JCC, W.D. Wash.**

On December 1, 2022, the Court sentenced Sharar to 12 months and 1 day in prison, three years of supervised release, and $2,144,551 in restitution after she pled guilty to one count of wire fraud. According to the government, Sharar stole over $2.1 million from her employer, a profound betrayal, while she served as the Chief Financial Officer. She worked for her employer for over 21 years and was considered a friend. She exploited that trust and friendship, but also took advantage of a series of medical problems that all but incapacitated the victim. Sharar prepared and submitted multiple false financial statements. Sharar used the victim's suffering to launch a three-year campaign of embezzlement. Sharar admitted the crimes before she was caught. The guideline range, according to the government, was 41-51 months. The victim, ultimately, did not want Sharar to go to prison. For the theft of $2.1 million, the government recommended 18 months of prison.

## IV.    CONCLUSION

For the above stated reasons, Sabrina requests a sentence of probation or supervised release with no term of imprisonment. Sabrina has the resources and community support that negate any necessity for a prison sentence. Ex. 7 (support letters). Supervision with one year of home detention on electronic monitoring best captures the reasons listed in the sentencing statute. By allowing Sabrina to remain in the community – with punishment on home detention – this Court has a full assurance that she will not be subjected to sexual assault within the BOP and she will be able to access treatment and medication in the most effective manner.

DATED this 23rd day of January 2023.

Respectfully submitted,

s/ *Greg Geist*
Assistant Federal Public Defender
Attorney for Sabrina Taylor

DEFENDANT'S SENTENCING MEMORANDUM
(*U.S. v. Taylor*; CR21-193-RSM) - 12

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100